FILED
10/03/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 22, 2018 Session

## IN RE KAYCEE M.[1]

**Appeal from the Chancery Court for Lawrence County**
**No. 17-18001       Stella L. Hargrove, Chancellor**

_____

No. M2017-02160-COA-R3-PT

_____

This action involves the termination of a father's parental rights to his minor child. Following a bench trial, the court found that clear and convincing evidence existed to support the statutory grounds of abandonment for failure to support, abandonment based upon his conduct prior to incarceration, substantial noncompliance with the permanency plans, and failure to manifest an ability and willingness to assume custody or financial responsibility of the child. The court further found that termination was in the best interest of the child. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

John M. Schweri, Columbia, Tennessee, for the appellant, Brian M.

Herbert H. Slatery, III, Attorney General & Reporter, and Jordan K. Crews, Assistant Attorney General for the appellee, State of Tennessee, Department of Children's Services.

Stacie Odeneal, Lawrenceburg, Tennessee, guardian ad litem for the minor, Kaycee M.

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

## OPINION

## I.  BACKGROUND

Kaycee M. ("the Child") was born to Jerrica L. ("Mother") and Brian M. ("Father") in May 2014.  The Child and her three-month-old baby brother ("baby brother") resided with Mother, who relocated out of Father's residence because he no longer had electricity.  The Tennessee Department of Children's Services ("DCS") removed the Child from Mother on February 25, 2016, following the death of the baby brother.  Mother reported that the baby brother had been sick in the days prior to his death and that she gave him medicine and brought him into bed with her and the Child after he awoke around 11:00 p.m.  She found him unresponsive the next morning.  Mother tested positive for amphetamine, methamphetamine, benzodiazepine, opiates, oxycodone, and THC, while Father tested positive for amphetamine, methamphetamine, and THC.  The Child, who completed a hair follicle screen, later tested positive for amphetamine and methamphetamine.

The Child was adjudicated dependent and neglected based upon the Parents' drug abuse, Father's lack of suitable housing, and Father's history of child abuse and neglect.[2]  The Child was placed with Father's sister, who disavowed Father and his abuse of drugs.  Father participated in the development of several permanency plans, the first of which required him to (1) complete an alcohol and drug assessment and follow recommendations; (2) complete a mental health assessment and follow recommendations; (3) maintain legal income; (4) maintain safe and stable housing; (5) resolve legal issues; (6) complete random drug screens and pill counts; (7) participate in domestic violence classes; (8) obtain safe and reliable transportation; and (9) participate in supervised therapeutic visitation.  The plan further provided that Father was required to remit child support, payable through the child support office.  Father signed the plan, dated March 24, 2016, but indicated that he did not agree with the plan's requirements and wrote at the bottom, "I agree with nothing!"  The court, finding that the requirements were reasonable and related to the conditions necessitating removal, ratified the plan after adding the following requirements: (10) complete a psychological evaluation and follow recommendations; (11) complete a parenting assessment and follow recommendations; and (12) participate in family counseling.  Father later signed the Criteria for Termination of Parental Rights, explaining the statutory grounds upon which DCS could file for termination.

A second permanency plan was developed on September 1, 2016, with the added goal of adoption.  Father signed the second plan and indicated his agreement with

---

[2] The details of his alleged history of child abuse and neglect are unknown.

"everything . . . except for the domestic violence steps" and the goal of adoption with anyone other than family. The court ratified the second permanency plan, noting that Father was not in compliance with the plan as evidenced by his failure to remit child support and his lack of completion of the requirements. A third and final permanency plan was developed on March 31, 2017, with the same goals and responsibilities contained in the prior two plans. Father participated in the development of the plan and indicated his disagreement with the goal of adoption. The final plan was also ratified.

DCS provided Father with contact information for several providers and programs, offered to assist in scheduling appointments, and administered drug screens. While Father completed some assessments and alcohol and drug counseling, he later failed several drug screens and tested positive for methamphetamine in March and April 2016 and amphetamine and methamphetamine in June 2016, September 2016, and April 2017. He then refused all drug screens administered by DCS, beginning April 10, 2017. He later admitted methamphetamine use in March and September 2017 and that he last used marijuana in September 2017. While Father attended visitation, he was combative with the supervisor. He had also failed to maintain stable housing, to remit child support, and to resolve his legal issues – Father was charged with failure to appear in June and July 2016, violation of probation in September and November 2016, and domestic assault and vandalism in June 2017.

DCS filed a petition to terminate his parental rights on April 13, 2017, alleging grounds of severe child abuse, abandonment for failure to support; abandonment based upon conduct prior to incarceration that exhibited a wanton disregard for the Child's welfare; substantial noncompliance with the permanency plans; and failure to manifest an ability and willingness to assume custody or financial responsibility of the Child.[3]

The case proceeded to a hearing on September 14, 2017. The hearing continued on September 15 and was finally completed on October 4. Father failed to appear on the morning of September 15. A well-check was performed at his residence, where Father was discovered in his pajamas. He refused to come to court, claiming that he was "not going because they were not going to give me the kids anyway."[4] Father appeared later in the day after his mother retrieved him from his residence.

As pertinent to this appeal, DCS presented numerous witnesses establishing Father's failure to complete the requirements of his permanency plan, his troubles with visitation, and his continued drug abuse and inability to provide housing. DCS also

---

[3] DCS also sought termination of Mother's parental rights. She ultimately executed a surrender of her parental rights and is not a party to this appeal.

[4] Father's reference to "the kids" rather than the one child at issue was confirmed by the trial court.

submitted evidence establishing that the Child was well-adjusted in her current home and that her paternal aunt wished to adopt her.

Roger Risner, employed by Overcoming Services, testified that he provided Father with in-home alcohol and drug counseling from April 2016 through March 2017, with some sessions occurring at the jail due to Father's incarceration. Mr. Risner testified that Father's home was not suitable for the Child when he last visited in March 2017. He agreed that Father passed two drug screens while receiving services but confirmed that Father had since failed a screen in April 2017. He stated that Father also completed three domestic violence sessions while receiving services but confirmed that Father had since been arrested for domestic assault in July 2017.

The Child's family service worker, Christian Gray, and two employees of Health Connect America, Samantha Butler and Tyanesha Campbell, testified concerning Father's visitation with the Child. Ms. Grey testified that she supervised a visit on May 26, 2017, during which Father advised the Child not to "fraternize with the enemy." She further claimed that she ended a supervised visit in August 2017 as a result of his behavior. Ms. Butler claimed that she moved his visits to the DCS office because she felt threatened or in fear as a result of his behavior, and Ms. Campbell claimed that Father ignored her questions concerning his failure to complete alcohol and drug education.

Father completed a mental health assessment administered by Centerstone but never agreed with the diagnosis or suggested treatment. He also only completed 1 out of 24 required domestic violence classes, claiming that he completed some sessions with Mr. Risner and was not an offender but was a victim of domestic violence.

Father presented a different story, claiming that DCS failed to assist him, that he was unable to work as a result of side effects from medication for depression, and that he was the victim of a "conspiracy" to keep him away from the Child. He admitted that he was self-employed in the construction business and that he advised the court in August 2017 that he planned to work for an individual doing construction. He confirmed that he worked in August and September 2017 and ultimately received payment of $2,400. He claimed that he was only able to work because he resumed his methamphetamine use. He believed the methamphetamine provided him with the focus and energy needed to work. He stated that he used the money to establish a home for the Child but agreed that he still had not secured water and sewer services at the time of the hearing. He identified the order setting child support of $240 per month, beginning August 2016, and claimed that the approximately $5,000 he paid on his home should be considered child support.[5]

---

[5] While he did not remit support during the relevant time period, he submitted a $500 purge payment in May 2017 to avoid further incarceration.

The trial court granted the termination petition, sustaining all but one ground alleged, namely severe child abuse. The court further found that termination was in the best interest of the Child. This timely appeal followed.

## II.     ISSUES

We consolidate and restate the issues on appeal as follows:

A.     Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

B.     Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment related to Father's conduct prior to incarceration pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

C.     Whether clear and convincing evidence supports the court's termination based upon a finding of substantial noncompliance with the permanency plan pursuant to Tennessee Code Annotated section 36-1-113(g)(2).

D.     Whether clear and convincing evidence supports the court's termination based upon a finding that Father failed to assume custody or financial responsibility of the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(14).

E.     Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

F.     Whether Father should be held responsible for costs and attorney fees on appeal pursuant to Tennessee Code Annotated section 27-1-122.

## III.     STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a

parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV. DISCUSSION

### A. & B.

Parental rights may be terminated if the parent has been incarcerated during all or part of the four months immediately preceding the filing of the termination petition *and* has either willfully failed to support the child for four consecutive months preceding the incarceration *or* has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child. Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv). Here, Father was incarcerated for a portion of the four months preceding the filing of the termination petition. The parties agreed that the applicable four-month window was from July 2, 2016, through November 2, 2016.[6]

---

[6] Father's last period of incarceration prior to the filing of termination petition began on November 3, 2016. "The applicable four-month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014). We reason the same holds true for the start date of the parent's incarceration.

1.

A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). This court has consistently held that the term willfulness as it applies to a party's failure to visit or remit support must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audrey S.*, 182 S.W.3d at 863. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

Father admits his failure to remit support but claims that such failure was not willful when he allocated the money for home repairs necessary to establish a suitable home for the Child. He explains that he would allocate the money differently now if given the chance and claims that his failure to prioritize his support payments was a result of his lack of understanding of a complex system with numerous requirements. We sympathize with Father's dilemma; however, the fact remains that he was advised of his obligation to remit support as evidenced by the child support order, the parenting plans, and his signing of the Criteria for Termination of Parental Rights. Further, "[e]very parent who is [18] years of age or older is presumed to have knowledge of [his or her] legal obligation to [remit] support." Tenn. Code Ann. § 36-1-102(1)(H). Accordingly, we conclude that there was clear and convincing evidence to establish that Father abandoned the Child by willfully failing to remit support during the relevant time period.

2.

Tennessee Code Annotated section 36-1-113(g)(1) provides that parental rights may be terminated where an incarcerated parent abandons a child by engaging in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv). To prove this ground, DCS must establish that (1) Father was incarcerated at the time the termination petition was filed or within the preceding four-month period and that (2) he engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Kason C.*, No. M2013-02624-COA-R3-PT, 2014 WL 2768003, *5 (Tenn. Ct. App. June 17, 2014). Parental conduct exhibiting wanton disregard for a child's welfare may occur at any time prior to incarceration and is not limited to acts

occurring during the four-month period immediately preceding the incarceration. *State of Tenn., Dep't. of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009).

We have held on numerous occasions that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68. Father incurred a number of charges prior to his last relevant period of incarceration, namely he was charged with failure to appear in June and July 2016 and violation of probation in September and November 2016. Further, he continued in his drug abuse after the Child was removed as evidenced by his failed drug screens in March 2016, June 2016, and September 2016.

Father claims that his actions did not evidence a wanton disregard when he was only incarcerated briefly for various misdemeanor charges and has never been convicted of a felony. This court has held that "[a] parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *Id.* at 866. Here, the Child languished in custody while Father continued in his criminal behavior and continually failed to adequately address his substance abuse issues. His actions only prolonged the Child's quest for permanency and stability and evidenced a wanton disregard for her welfare. With these considerations in mind, we conclude that there was clear and convincing evidence to establish that Father abandoned the Child by engaging in conduct prior to incarceration that exhibited a wanton disregard for her welfare.

C.

Tennessee law requires the development of a plan of care for each foster child and further requires that the plan include parental responsibilities that are reasonably related to the plan's goal. Tenn. Code Ann. § 37-2-403(a)(2)(A). A ground for termination of parental rights exists when a petitioner proves by clear and convincing evidence that "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). To establish noncompliance, the trial court must initially find "that the requirements of the permanency plans are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place." *In re M.J.B.*, 140 S.W.3d at 656; *see In re Valentine*, 79 S.W.3d at 547. Second, the court must find that the parent's noncompliance is substantial, *In re M.J.B.*, 149 S.W.3d at 656, meaning that the parent must be in "noncompliance with requirements in a permanency plan that are reasonable and related to remedying the conditions that warranted removing the child from the parent's custody." *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL

21266854, at \*12 (Tenn. Ct. App. June 3, 2003). To assess a parent's substantial noncompliance with a permanency plan, the court must weigh "both the degree of noncompliance and the weight assigned to that particular requirement." *Id.* at \*12. Conversely, "[t]erms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant." *In re Valentine*, 79 S.W.3d at 548-49.

In the case at bar, the permanency plans required Father to (1) complete an alcohol and drug assessment and follow recommendations; (2) complete a mental health assessment and follow recommendations; (3) maintain legal income; (4) maintain safe and stable housing; (5) resolve legal issues; (6) complete random drug screens and pill counts; (7) participate in domestic violence classes; (8) obtain safe and reliable transportation; (9) participate in supervised therapeutic visitation; (10) complete a psychological evaluation and follow recommendations; (11) complete a parenting assessment and follow recommendations; and (12) participate in family counseling. We agree with the trial court that these requirements, considering Father's circumstances, were reasonable and related to the conditions warranting the placement of the Child in DCS custody.

Father asserts that he evidenced compliance with the requirements by attempting to establish a suitable home for the Child, passing several drug tests, and participating in numerous evaluations, assessments, and counseling sessions. He concedes his failure to remit child support but again explains that he was attempting to establish a suitable home and has since resumed support payments. We acknowledge that Father completed several assessments and participated in sessions; however, he simply failed to address the most important aspects of the plan that would have resulted in his ability to care for the Child, namely to resolve his legal issues and adequately address his drug abuse. Instead of resolving his legal issues, he incurred additional criminal charges while the Child was in custody and failed to remit child support until he was jailed and required to submit a purge payment. He also repeatedly failed drug screens and later refused to submit to any drug screens. With the above considerations in mind, we conclude that there was clear and convincing evidence to establish that Father failed to substantially comply with the requirements of the permanency plan.

D.

A parent's parental rights may be terminated when the parent has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child and when placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child. Tenn. Code Ann. § 36-1-113(g)(14).

Father asserts that he evidenced his ability and willingness to assume legal and physical custody of the Child by preparing a home for her, attending visitation, and participating in counseling, evaluation, and treatment. While Father admittedly completed requirements in the permanency plan by completing evaluations and participating in counseling and treatment, his criminal behavior continued through June 2017, when he was arrested for domestic assault. He further failed to address his substance abuse issues as evidenced by his admission at the hearing that he last used methamphetamine and marijuana in the days before the hearing. His home was also not yet suitable for the Child as evidenced by the lack of sufficient utilities at the time of the hearing. With these considerations in mind, we conclude that there was clear and convincing evidence to establish that Father failed to manifest an ability and willingness to assume custody of the Child and that her placement in the home would pose a risk of substantial harm to her physical or psychological welfare.

E.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground to terminate Father's parental rights, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i)     In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> > (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> >
> > (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[7]
> >
> > (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

---

[7] *In re Kaliyah S.*, 455 S.W.3d at 555 ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Father argues that termination was not in the best interest of the Child and asks this court to remand the matter for him to evidence his continued compliance in his

attempt to regain custody of the Child.[8]  Despite Father's claim, a number of the best interest factors weigh against him.  He has not made the adjustment of circumstances necessary to make it safe and in the Child's best interest to return home.  The record reflects that he does not have suitable utility services and that he last used methamphetamine and marijuana days before the start of the termination hearing.  Tenn. Code Ann. § 36-1-113(i)(1), (2).  The Child resides in a safe and stable home that is willing and able to adopt her.  The Child was not residing with Father prior to her removal, and she has since resided with her foster family for approximately 20 months prior to the termination hearing.  Removing her from her current home would likely negatively affect her emotionally and psychologically.  Tenn. Code Ann. § 36-1-113(i)(5).  Questions remain concerning his ability to care for her as evidenced by his failure to address his substance abuse issues.  He even failed to appear on the second day of the hearing and only returned when retrieved by his mother.  Tenn. Code Ann. § 36-1-113(i)(7).  He has also failed to remit child support.  Tenn. Code Ann. § 36-1-113(i)(8).

While we do not wish to discount Father's love for the Child and any remaining relationship that may still be intact, the Child is in need of permanency and a stable home that Father has shown he cannot provide now or in the near future.  With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. We affirm the decision of the trial court.[9]

F.

Guardian asks this court to find Father's appeal frivolous and a frustration of the Child's need for permanency and stability.  She explains that Father failed to assert an adequate basis upon which this court may afford relief when the trial court presented thorough and sufficient findings adequately addressing each ground of termination. Tennessee Code Annotated section 27-1-122 provides for an award of damages,

---

[8] Father further requests reversal of the court's termination decision based upon the cumulative error doctrine.  He explains that his counsel's failure to present proof on his behalf resulted in an unfair trial, necessitating reversal of the decision.  DCS responds that no Tennessee court has applied the doctrine in a civil case and that Father failed to articulate how the failure to present proof constituted error.  We agree with DCS.

[9] Father submitted a letter "in hopes of informing the court of a few important matters" not addressed by his attorney at oral argument.  We acknowledge receipt of the letter; however, we must reiterate that we decide cases based upon the record in the trial court, absent a properly filed motion requesting consideration of post-judgment facts.  *See* Tenn. R. App. P. 14 ("[This court] may consider facts concerning the action that occurred after judgment.").  Here, Father offers explanations and arguments concerning the court's factual findings and does not request consideration of facts that occurred after judgment.

including attorney fees, when an appeal is determined to be frivolous.  To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues.  *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995).  An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals.  *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006).  Our Supreme Court provided the following guidance on this issue in the context of a parental rights termination case:

> The determination of whether a parent's rights to his/her child should be terminated is the most serious and grave issue to be addressed by this Court.  Accordingly, we are loathe to consider an appeal of a trial court's judgment terminating a parent's rights to be frivolous.

*In re M.L.D.*, 182 S.W.3d 890, 898 (Tenn. Ct. App. 2005) (finding the appeal frivolous when the appellant failed to provide an adequate record for review and raised new issues on appeal).  We agree that this appeal is a frustration of the Child's need for permanency and stability; however, we do not wish to discourage future legitimate appeals, especially in cases involving a decision concerning parental rights.  Exercising our discretion in such matters, we respectfully deny the request.

## V.     CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Brian M.

_____
JOHN W. McCLARTY, JUDGE